IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD DENNIS STRECK, III,<br><br>Defendant. | Case No. 1:12-CR-157-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it two motions to suppress filed by defendant Streck. The Court held an evidentiary hearing on December 3, 2012, and took the motions under advisement. For the reasons explained below, the Court will deny both motions.

## FACTS

On January 19, 2011, Deputy Brandon Stromberg of the Payette County Sheriff's Office was patrolling Interstate 84 near the Oregon/Idaho border. He noticed a vehicle with a cracked windshield – a traffic violation – and pulled in behind it. As he did, he saw the vehicle change lanes without signaling properly, another traffic violation. Based on these two violations, he pulled the vehicle over.

The driver was defendant Streck and his passenger was Tami Spring. Deputy Stromberg approached the car from the passenger side and talked with Spring. At the suppression hearing, Deputy Stromberg testified that he observed that Spring was (1)

**Memorandum Decision & Order - 1**

extremely nervous; (2) moving as far away from the door as she could get; (3) fidgeting with her hands; (4) displaying jerky head movements; (5) refusing to look the Deputy in the eye; (6) appearing pale or clammy; and (7) having a pulsating carotid artery.

From these observations, Deputy Stromberg concluded that Spring was under the influence of methamphetamine. At the same time, Deputy Stromberg observed Streck was trying to hurry along the traffic stop and also appeared very nervous. He also concluded that Streck looked like he had used methamphetamine, although not under the influence to the same degree as Spring.

At this point, Deputy Stromberg prolonged the traffic stop to investigate suspected drug use and/or possession. Before running Streck's license and registration through a background check – the routine business of every traffic stop – he followed interrogation training by separating the two, and questioning them on topics ranging from their relationship to their destination, to see if their stories matched. The traffic stop had turned into a drug investigation.

About 6 minutes into the stop – after getting conflicting answers from the two – Deputy Stromberg called for a drug-sniffing dog and requested the Payette County dispatcher to run a check on the license and registration, and also to run a criminal record check. When the drug dog arrived, it began searching the outside of the vehicle, and alerted near the passenger door. The time that elapsed between the stop of the vehicle and the alert of the drug dog was about 14 minutes.

After the drug dog alerted on the vehicle, Spring told Deputy Stromberg that there

**Memorandum Decision & Order - 2**

was marijuana in the vehicle's door. Deputy Stromberg searched the vehicle and found marijuana and methamphetamine in Spring's purse. Additional marijuana, glass pipes, and plastic baggies were also found in the vehicle.

Deputy Stromberg returned to Streck, placed him in handcuffs, and explained that he was not under arrest, but that he was being detaining based on what was found in the vehicle. The following colloquy occurred between the two men:

Stromberg: Before you make any statement, you have the right to remain silent, anything you say can and will be used against you in a court of law.

Streck: Yes sir.

Stromberg: You also have the right to have an attorney present during your questioning. If you cannot afford one, the courts will appoint one for you before any questioning takes place if you wish one. You also have the right to interrupt conversation and you can invoke these rights at any time.

Streck indicated that understood his rights and agreed to speak with the Deputy. He stated that he had an "illegal" shotgun that "might be too short," which was located in the vehicle. Streck said that he purchased the gun one month earlier. He also stated that he smoked methamphetamine the prior night and that the two pipes were his. A search of the trunk of the vehicle revealed the presence of a sawed-off shotgun, which forms the basis for the pending federal indictment.

## ANALYSIS

**Memorandum Decision & Order - 3**

## *Terry* **Stop**

There is no dispute that the cracked windshield and lane change violation allowed Deputy Stromberg to stop Streck's vehicle under *Terry v. Ohio*, 392 U.S. 1 (1968). The investigatory stop cannot last longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer,* 460 U.S. 491, 500 (1983). However, the scope of the stop may be expanded when new grounds are discovered that raise a reasonable suspicion of criminal activity. *See U.S. v. Rodgers,* 656 F.3d 1023, 1027 (9th Cir. 2011).

Deputy Stromberg almost immediately expanded the scope of the stop because he suspected Spring was under the influence of methamphetamine. At the hearing, he testified that he based his suspicion on the seven observations listed above. But he failed to note most of them in his very detailed report, written just a day after the incident. There is nothing in the report about Spring fidgeting with her hands, displaying jerky head movements, refusing to look the Deputy in the eye, appearing pale or clammy, or having a pulsating carotid artery. Most importantly, there is nothing in the report about Deputy Stromberg suspecting that Spring was using methamphetamine. And finally, although Deputy Stromberg testified at the hearing that he suspected Streck was under the influence of methamphetamine, he also failed to include that in his report.

These are major omissions. Leaving out these crucial details is either evidence of sloppiness or fabrication. After struggling with this for some time, the Court concludes that it is the former rather than the latter. The officer's testimony was largely corroborated by the video and audio recordings, although they could not provide the court

**Memorandum Decision & Order - 4**

with a view of what Deputy Stromberg observed in the interior of Streck's vehicle. Nor could they disclose what Stromberg thought. Stromberg gained some credibility by being candid about the shortcomings of his report. Finally, nothing about his demeanor suggested to the Court that he was not being truthful during his testimony. Given all the circumstances before it, the Court cannot find that Deputy Stromberg committed perjury at the suppression hearing.[1]

Finding, therefore, that Deputy Stromberg did in fact observe all seven of the facts listed above, the Court must determine whether they were sufficient to raise a reasonable suspicion that Spring was using methamphetamine, and thereby allow Deputy Stromberg to prolong the traffic stop under *Rodgers*, cited above. "Reasonable suspicion" requires a minimal level of objective justification, more than an inchoate or unparticularized suspicion or "hunch," but less than probable cause. *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989). In assessing the existence of reasonable suspicion, the Court must evaluate the acts together – while each might be innocent in itself, the whole might warrant further investigation. *U.S. v. Arvizu,* 534 U.S. 266, 273 (2002).

That is the case here. This Court's long experience with descriptions of methamphetamine use leads the Court to find that Deputy Stromberg had a reasonable suspicion – formed just a few minutes after the traffic stop – that Spring was using methamphetamine. That allowed him to expand the purpose of the traffic stop, and

---

[1] This was a close call that was completely unnecessary. Deputy Stromberg is cautioned that the Court might well have reached a different conclusion if his testimony had been disputed by any other witnesses or contradicted, in any way, by the physical evidence.

**Memorandum Decision & Order - 5**

prolong its duration to investigate drug use.

This investigation was done expeditiously. The drug dog arrived on the scene within 13 minutes and alerted just a minute later. While emphasizing that there is no "bright-line" rule, the Ninth Circuit has held "that fourteen minutes is not unreasonably long for a traffic stop." U.S. v. Turvin, 571 F.3d 1097, 1102 -03 (9th Cir. 2008).

This Court likewise refuses to set a "bright-line" duration for traffic stops. The Court is simply holding that under the specific facts of this case – where the officer almost immediately had a reasonable suspicion of drug use that was confirmed by the drug dog at the 14 minute mark – the traffic stop was not unduly prolonged.

## *Miranda* Violation

Streck argues that his statements about the sawed-off shotgun must be suppressed because he made them after an insufficient *Miranda* warning. See Miranda v. Arizona, 384 U.S. 436 (1966). The Court disagrees.

The Government argues first that *Miranda* does not apply because Streck was not in custody. Because the Court finds for the Government on other grounds, the Court will assume, *arguendo*, that Streck was in custody. With that assumption, *Miranda* prescribes the following four warnings:

> [A suspect] must be warned prior to any questioning (1) that he has the right to remain silent, (2) that anything he says can be used against him in a court of law, (3) that he has the right to the presence of an attorney, and (4) that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

Id. at 479. These four warnings "are invariable," but the words used may be varied so

**Memorandum Decision & Order - 6**

long as the "essential information is conveyed." *Florida v. Powell*, 130 S.Ct. 1195, 1204 (2010). In determining whether police officers adequately conveyed the four warnings, this Court is not required to examine the words employed "as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably conve[y] to [a suspect] his rights as required by *Miranda*." *Id.* (quoting *Duckworth v. Eagan*, 492 U.S. 195, 201(1989)).

Streck argues that Deputy Stromberg's warning violated *Miranda* because it failed to tell him he had the right to consult with an attorney before questioning began. In a case following *Miranda*, the Supreme Court held that *Miranda* requires "the suspect be informed . . . that he has the right to an attorney *before* and during questioning . . ." *Duckworth*, 492 U.S. at 204 (emphasis added). The Ninth Circuit has followed that precedent: "In order to be valid, a *Miranda* warning must convey clearly to the arrested party that he or she possesses the right to have an attorney present *prior to* and during questioning." *U.S. v. San Juan-Cruz*, 314 F.3d 384, 388 (9th Cir. 2002) (emphasis added). The Circuit went on to hold that "[a] confession that is made by an individual . . . absent the knowledge that he or she possesses the right to have an attorney present *prior to* and during questioning is unreliable and may not be admitted at trial." *Id.* at 389 (emphasis added).

The failure to explicitly give this notice can be cured, however, if the entire *Miranda* warning essentially conveys that message. For example, in *Powell* the Supreme Court reviewed a notice that failed to explicitly notify defendant that he had the right to

**Memorandum Decision & Order - 7**

consult an attorney during questioning (although it warned of the right to consult before questioning).[2] *Powell* held that the lack of an explicit notice on that issue was cured by the essential message conveyed by the entire *Miranda* warning:

> [The officers] informed [the defendant] Powell that he had "the right to talk to a lawyer before answering any of [their] questions" and "the right to use any of [his] rights at any time [he] want[ed] during th[e] interview." The first statement communicated that Powell could consult with a lawyer before answering any particular question, and the second statement confirmed that he could exercise that right while the interrogation was underway. In combination, the two warnings reasonably conveyed Powell's right to have an attorney present, not only at the outset of interrogation, but at all times.

*Id.* at 1204-05. The Ninth Circuit similarly looked at the entire warning given in rejecting a *Miranda* challenge in *People of Territory of Guam v. Snaer*, 758 F.2d 1341 (9th Cir. 1985). There, the Circuit encountered a *Miranda* warning that failed to expressly state that the defendant had the right to consult with a lawyer "before questioning" or " prior to questioning." *Id.* at 1343. The warning only stated that "[y]ou have a right to consult with a lawyer and to have a lawyer present with you while you are being questioned." *Id.* The Circuit held that "the first part of that sentence read in the context of the latter half of the sentence does adequately convey notice of the right to consult with an attorney before questioning." *Id.*

This case is closest to *Snaer* and *Powell*. Here, Deputy Stromberg warned Streck

---

[2] The full warning in Powell was as follows: "You have the right to remain silent. If you give up the right to remain silent, anything you say can be used against you in court. You have the right to talk to a lawyer before answering any of our questions. If you cannot afford to hire a lawyer, one will be appointed for you without cost and before any questioning. You have the right to use any of these rights at any time you want during this interview." Powell, 130 S.Ct. at 1200.

**Memorandum Decision & Order - 8**

that (1) "You also have the right to have an attorney present during your questioning," and (2) "If you cannot afford one, the courts will appoint one for you before any questioning takes place if you wish one." To tell someone they have a right to an attorney is to tell them they can consult with that attorney. After all, the attorney is not a potted plant. Thus, although Streck was only told that he had the right to an attorney prior to questioning, that statement conveyed the message that he could consult with that attorney prior to questioning. Under *Snaer* and *Powell*, the entirety of the warning conveyed *Miranda's* requirements.

## Conclusion

For all of these reasons, the Court will deny the two motions to suppress filed by Streck.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motions to suppress (docket nos. 19 & 20) are DENIED.

DATED: **December 4, 2012**



Honorable B. Lynn Winmill
Chief U. S. District Judge